**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RICHARD ANTHONY DISCO,　　　　)
　　　　　　　　　　　　　　　　)　　Civil Action No. 2:19-cv-00130
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Magistrate Judge Lisa Pupo Lenihan
SHELLY LEE THOMPSON, et al.,　　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)　　ECF No. 33
　　　　　　　　　　　　　　　　)

## MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS

For the reasons set forth herein, Defendants' Motion to Dismiss the Complaint (ECF No. 33) will be granted as to Plaintiff's (1) claims against individual Defendants in their official capacities or against the Defendant Parole Board, and (2) claim for damages for mental or emotional injury, and said Motion will be otherwise denied. More specifically, the Court finds that *pro se* Plaintiff's §1983 claim for Constitutional violation of his Fourteenth Amendment due process rights is sufficient to survive said Motion. In so concluding, the Court has thoroughly reviewed the parties' briefings and given *pro se* Plaintiff all due consideration.

## I. FACTUAL AND PROCEDURAL HISTORY; COMPLAINT

### A. Factual History

Plaintiff Richard Anthony Disco ("Disco" or "Plaintiff"), an inmate currently incarcerated at the State Correctional Institution at Fayette, filed this civil rights action regarding the sentence recalculation made by Defendant Shelly Lee Thompson ("Thompson"), a Records

Office Specialist employed by the Pennsylvania Department of Corrections (the "DOC"), and implemented by Defendant Doe, an employee of the Pennsylvania Board of Probation and Parole (the "Parole Board"). As set forth in relevant portions of Plaintiff's September 3, 2019 Amended Complaint, ECF No. 32, Plaintiff was scheduled for a release interview with the Parole Board in November, 2015, in accordance with his eligibility for parole on his minimum release date of March 23, 2016. Subsequent to cancellation of that meeting without explanation, Plaintiff learned that his sentence credit on a prior ("original") sentence had been modified by Defendant Thompson in October, 2015 and that his current sentence – and thus his current minimum and maximum release dates – had been extended by two years and nine months. Thus, Plaintiff's minimum release date was changed to December 31, 2018 and his release interview cancelled. The Amended Complaint exhibits indicate that the Defendants' "recomputations" related to a complex myriad of: Plaintiff's parole violation(s), credit "removal" and "reapplication", the DOC's correction of its own prior calculation "error", and the Parole Board's recission(s) and reestablishment(s) of its own related actions. *See e.g., infra* n. 2. At bottom, it appears to this Court that following the DOC's October, 2015 recalculation of credits, the Defendants (1) extended Plaintiff's original sentence "maximum [sentence] date" from August 4, 2006 to May 14, 2009 (although his maximum sentence on the original sentence had been designated as completed on August 4, 2006, *i.e.* approximately nine years prior),[1] (2) correspondingly extended the start date of his "new conviction" sentence from August 5, 2006 to May 15, 2009, and (3) thus extended his current sentence minimum and maximum release dates by the same 33 months. *See Disco v. Pennsylvania Board of Probation and Parole*, No. 1615-CD-2016,

---

[1] This action was later at the crux of the Commonwealth Court's due process concerns, and the basis of its reversal. *See* discussion, *infra*.

Unreported Memorandum Opinion, January 8, 2018; ECF No. 32, Ex. C (the "Commonwealth Court Opinion").[2]  To be clear then, it appears that credit for 33 months incarceration time served by Plaintiff was rescinded from his current sentence on the basis of DOC employee Thompson's credit recalculation.  *See generally* Commonwealth Court Opinion (more fully explicating the "complex sentencing history" of the case and summarizing that: "Based on DOC's [credit] restructures, the Board changed Disco's maximum sentence date for his Original Sentence - received in January 1986 and served in August 2006 - without intervening parole violations or sentencing orders from the courts."); *id.* at 13 ("The maximum sentence date on his Original Sentence is relevant because it dictates the effective date of his Current Sentence . . . .").

Plaintiff's timely filed grievance was denied,[3] but his appeal to the Pennsylvania Commonwealth Court was ultimately granted.  As Plaintiff correctly notes, the Commonwealth Court Opinion observed that: "It is axiomatic that an inmate may not serve additional time over the time ordered by the sentencing courts."  The Court further observed that it appeared the DOC's "greatly delayed restructuring of credits" had been made without an intervening Court order, that "[s]ignificantly, DOC did not believe there would be any material change to Disco's sentence",[4] and that the Board offered no other explanation or authority for its alteration of

[2] The Commonwealth Court Opinion notes that on June 8, 2006, Disco (a repeat theft offender with multiple technical parole violations) was resentenced by the trial court "to an aggregated term of 10-20 years".  This was his "new" or "current" sentence.  Opinion at 3.

[3] *See* ECF No. 37-3 (Pennsylvania Department of Corrections First Appeal Decision, Feb. 24, 2017).  The DOC denied Plaintiff's appeal of the extension of his sentence and provided a somewhat convoluted account of the DOC's positions on its Sentence Computation Unit's recalculations, while acknowledging that the DOC had been incorrect as to a prior recalculation which Plaintiff had successfully disputed.  *See also* text *supra*.

[4] Opinion at 3 (quoting DOC's writing that "the [B]oard could just note the restructure of the computation . . . and close out the case as of 8/4/06").

Disco's sentence dates.[5]  Finally, the Court noted that Disco "completed serving his Original Sentence on August 4, 2006" and that he did so "in accordance with sentencing court orders." The Commonwealth Court reversed the Board's Order, and Plaintiff's prior sentence dates were reinstated.  *See* Commonwealth Court Opinion ("Mindful of due process principles and absent any record support for requiring a change to a fully served sentence, we discern merit in Disco's appeal.").[6]

Plaintiff states that his minimum release interview date "was taken away because the Defendants decided to alter a sentence that expired 10 years earlier."  ECF No. 37 at 1.  The pleadings of record do not reflect if or when a minimum release interview was provided to Plaintiff following the Commonwealth Court's reversal of the Board's Order, more than two years after cancellation of Plaintiff's November 2015 release interview.[7]

In his Amended Complaint, Plaintiff seeks "punitive damages in excess of $100,000", but there is nothing in his *pro se* complaint to suggest the designation of the damages as "punitive" was purposefully to the exclusion of other damages (*e.g.*, compensatory) to which Plaintiff could plausibly be entitled.  *Cf.* Section II, *infra*, regarding the liberality afforded in construing a *pro se* Plaintiff's complaint; Section III(D), regarding Defendants' grounds for dismissal.

---

[5] Opinion at 12 ("Of note, the Board cites no legal authority to support alteration of a sentence that has been completed almost a decade earlier.").

[6] Plaintiff filed a second grievance in May 2018, approximately three months after the Commonwealth Court's decision, which was also denied.  *Cf.* ECF No. 37 at 6 (referencing Complaint Ex. F-8).

[7] *Cf.* ECF No. 37 at 8 ("It took the Plaintiff 28 months to have this matter corrected.")

B. **Procedural History**

Plaintiff commenced this civil action on February 6, 2019. Defendants' April 29, 2019 Motion to Dismiss, ECF No. 12, was rendered moot when Plaintiff was granted leave to file an Amended Complaint (by Order at ECF No. 21) which was ultimately docketed on September 3, 2019. ECF No. 32. *See also* ECF No. 26 (Order dismissing ECF No. 12 as moot). The pending Motion to Dismiss, together with Defendants' Brief in Support, was filed on September 4, 2019. ECF No. 33 and 34, respectively. Plaintiff's Response was filed on November 19, 2019. ECF No. 37. Accordingly, Defendants' Motion is ripe for disposition.

## II.    STANDARD OF REVIEW

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler, 578 F.3d at 213* (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin,*

*Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and

Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v.*

*Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider

indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension*

*Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v.*

*Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of

which they may take judicial notice, including records and reports of administrative bodies, and

publicly available records and transcripts from judicial proceedings 'in related or underlying

cases which have a direct relation to the matters at issue.'") (citations omitted). More

specifically, the Court may take judicial notice of other court records without converting a

12(b)(6) motion to dismiss into a motion for summary judgment.

When considering *pro se* pleadings, a court must employ less stringent standards than

when judging the work product of an attorney. *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

When presented with a *pro se* complaint, the court should construe the complaint liberally and

draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v.*

*Strasberg,* 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the

applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Higgins v.*

*Beyer,* 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs,* 165 F.3d

244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this

is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently

alleges deprivation of any right secured by the Constitution."). Notwithstanding this liberality,

*pro se* litigants are not relieved of their obligation to allege sufficient facts to support a

cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir.

2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Finally, the United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a District Court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

## III.    ANALYSIS

### A.  Section 1983

Pursuant to 42 U.S.C. § 1983, private citizens are afforded a means to redress violations of federal law committed by state actors. In pertinent part, § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ...

*Id*. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). To establish a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Id*. (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). There is no dispute that the individual Defendants were acting under color of state law at all times relevant to this litigation, and - as discussed below – with the exception of limitations on (1) § 1983 actions against individuals in their official capacities or administrative agencies and (2) prisoners' § 1983 damage claims for mental or emotional injury absent physical injury - Defendants' other grounds for dismissal do not pass muster. Accordingly, this Court's § 1983 analysis turns primarily on whether Plaintiff has alleged a

plausible violation of his federal rights and in particular of a depravation of a protected liberty interest without due process of law.

### B. Fourteenth Amendment

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1. Here, Plaintiff asserts violations of his due process rights based on alteration to a sentence served and deprivation without due process of the release interview scheduled pursuant to his correct minimum release date. *See* ECF No. 32 and 37.

The Third Circuit Court of Appeals has explained that:

> [t]he boundary between Fourth Amendment and Fourteenth Amendment claims is, at its core, temporal. The Fourth Amendment forbids a state from detaining an individual unless the state actor reasonably believes that the individual has committed a crime—that is, the Fourth Amendment forbids a detention without probable cause. *See, generally, Bailey v. United States*, ——U.S. ——, 133 S. Ct. 1031, 1037, 185 L.Ed.2d 19 (2013). But this protection against unlawful seizures extends only until trial. *See Schneyder v. Smith*, 653 F.3d 313, 321 (3d Cir. 2011) (observing that post-conviction incarceration does not implicate the Fourth Amendment). The guarantee of due process of law, by contrast, is not so limited as it protects defendants during an entire criminal proceeding through and after trial. *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir.2004) ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." (internal citation omitted)).

*Halsey v. Pfeiffer*, 750 F.3d 273, 291 (3d Cir. 2014).

Accordingly, as Plaintiff's §1983 claim relates to a period of confinement subsequent to arrest, the claim is properly analyzed under the Fourteenth Amendment. To state a *substantive* due process claim under §1983, a plaintiff must allege facts that plausibly establish: (1) that the particular interest at issue is protected by the Fourteenth Amendment, and (2) that the

government's deprivation of that protected interest shocks the conscience. *Connection Training Serv. v. City of Phila.*, 358 F. App'x 315, 319 (3d Cir. 2009); *see Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir.2001) (substantive due process is violated when state conduct is "arbitrary, or conscience shocking, in a constitutional sense") (internal quotation marks and citation omitted). To state a *procedural* due process claim, a plaintiff must allege that: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Mulholland v. Government Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013). *See also* Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 659 (3d Cir. 2011) (noting that "[p]rocedural due process is implicated if [plaintiff] had a liberty interest in his release that cannot be infringed without procedural protections such as notice and a hearing" (citing *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708) ("[T]he procedural due process guarantee protects against 'arbitrary takings.' ") (citing *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

Defendants assert that they "did not violate Disco's Fourteenth Amendment rights because Disco was not detained past his maximum sentence." ECF No. 34 at 5. More specifically, Defendants assert that Plaintiff "does not establish a deprivation of liberty because he does not allege that his incarceration exceeds his release date." *Id.* In the course of repeating their position that Plaintiff "has not suffered a harm", Defendants proffer several arguments:

(1) Reincarceration of a prisoner who is released/paroled in error effects no due process violation − *See* ECF No. 34 at 6-7 (citing *Evans v. Sc. Pa. Dept. of Corr.*, 645 F.3d 650 (3d Cir. 2011). This observation, while correct, provides little support for Defendants' position. Reincarceration of a prisoner to *continue to correctly serve a sentence to which he was*

*committed with due process*[8] does not inform the question of a due process violation where a prisoner was allegedly denied, without due process, an opportunity for release because his Court-ordered sentence dates were altered.

Similarly, the holding in *Evans* itself, *i.e.*, that a delayed correction to the "improper start date of a sentence for a still-imprisoned convict" to eliminate "*the unlawful credit given*" as the result of the Commonwealth's "record-keeping mistake" does not support Defendant's position. Evans, 645 F.3d at 661, 664 (concluding that Evans had "no constitutionally protected liberty interest in being released contrary to Pennsylvania law", *i.e.*, earlier than "legally proper parole"); *id.* at 662 ("A defendant ... does not automatically acquire a vested interest in a shorter, but incorrect sentence. . . .").[9] *Cf.* Commonwealth Court Order at 10-11 (noting that delay alone does not preclude DOC or the Board from correcting recordkeeping errors to ensure an inmate serves his court-ordered term"); *id*. at 11 (finding the facts in *Disco* "materially distinguishable" from those of *Forbes v. Pa. Bd. Of Prob. & Parole*, 931 A.2d 88 (Pa. Cmwlth. 2007) wherein error was corrected "to require that [the inmate] serve the sentence that he actually received").

---

[8] *See* Evans, 645 F.3d at 660 ("In *Vega v. United States,* a prisoner, through no apparent fault of his own, was erroneously released . . . for approximately two years before he was arrested to serve the remainder of his sentence. 493 F.3d 310, 313 (3d Cir.2007). We concluded that the mistaken release of a prisoner does not prevent re-incarceration *if time remains on the prisoner's sentence."*) (emphasis added).

[9] *See also id.* ("It is well-established that a prisoner cannot escape punishment simply because the court committed an error in passing sentence. *United States v. Busic,* 639 F.2d 940, 946 (3d Cir.1981) (citing *Bozza v. United States,* 330 U.S. 160, 166, 67 S.Ct. 645, 91 L.Ed. 818 (1947)). Neither should one escape punishment when the error at issue is not in the sentence itself but only *in the record keeping associated with the sentence*.") (emphasis added); *id.* (rejecting temporal limit "on the correction of an administrative mistake so that a lawful sentence can be served").

(2) Reincarceration of a prisoner who is released/paroled on the basis of falsehoods he presented during his parole evaluation effects no due process violation – *Id.* at 8 (citing *Jago v. Van Curen*, 454 U.S. 14 (1981)). As with *Evans, supra*, this case is not supportive.[10]

(3) More generally, denial of parole itself does not constitute a due process violation because "parole is not a constitutionally protected liberty interest under Pennsylvania law" and an inmate "does not have a clear legal right to the grant of parole." *See id.* at 7 (quoting *Coady v. Vaughn*, 770 A.2d 289 (Pa. 2001)),[11] *id.* (citing *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996). This argument is more relevant to Defendants' position. However, this line of cases derives from the relationship between the Parole Board and the Courts, and the wide discretion in granting parole vested in the Parole Board.

More particularly, Defendants correctly observe that under Pennsylvania law a Board's decision to deny parole affects no constitutionally protected liberty interest. *See Reider v. Bd. of Probation and Parole,* 514 A.2d 967, 970 (Pa.Commw. 1986)); *Commonwealth v. Stark,* 698 A.2d 1327, 1333 (Pa.Super.Ct.1997) ("A prisoner has no constitutional protected liberty interest in the expectation of being released from the confinement prior to the expiration of the maximum term of the imposed sentence." ). Plaintiff's Constitutional un-entitlement to a particular determination soundly placed within the full discretion of the Parole Board does not, however, inform his *entitlement to due process with regard to an alteration of his sentence* which effected deprivation of an early release opportunity. Unlike inmates such as Reider or Stark, Plaintiff does not challenge a Board decision denying him parole. Rather, Plaintiff challenges

---

[10] *Cf. Evans,* 645 F.3d at 664 (noting that in *Jago*, the Supreme Court "held that, although the inmate had suffered a grievous loss upon the rescission of his parole, he did not have a protectable liberty interest in his anticipated parole"). *Cf. also* text *infra* at III(B)(3).

[11] *See id. at* 487 (holding that Federal courts "are not authorized by the due process clause to second-guess parole boards").

Defendants' unauthorized alteration of his judicially imposed sentence and resultant deprivation of his opportunity to present his case for parole. *See* Commonwealth Court Opinion at 3; *id.* ("The Board and DOC 'are charged with faithfully implementing sentences imposed by the courts.'") (quoting *Comrie v. Dep't of Corr.*, 142 A.3d 995, 1001 (Pa. Cmwlth. 2016)).

First, as pointedly noted by the Commonwealth Court, Defendants proffered no authority whatsoever for their October 2015 extension of the maximum sentence date for the original sentence Disco completely served in August 2006. And "[i]t is axiomatic that an inmate may not serve additional time over the time ordered by the sentencing courts." Commonwealth Court Opinion at 12. An assertedly detrimental effect of Defendants' action was the cancellation of Plaintiff's November, 2015 release interview scheduled in keeping with his current Court-sentence minimum and maximum release dates.

Second, the Third Circuit has recognized that an inmate has a fundamental liberty interest in his eligibility for parole. *See* Berry v. United States, 412 F.2d 189, 192 (3d Cir. 1969) (holding that failure to inform defendant, prior to entry of guilty plea on narcotics charges, that he would be ineligible for parole vitiated plea). *Id.* at 192-93 (concluding that a pleader "must be apprised of the period of required incarceration"), *id.* (noting that "except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement . . . . [and] the knowledge of ineligibility for parole is as necessary to an understanding of the plea as is the knowledge of the maximum sentence possible.").[12] As the Circuit Court made clear, an inmate's

---

[12] *Cf.* Little v. Warden, 117 Nev. 845, 34 P.3d 540 (2001) (failure to advise does not warrant reversal where totality of circumstances demonstrate defendant was aware that he was ineligible); *id.* at 849 (disagreeing that court has duty to advise on grounds that "parole is a collateral consequence not within the purview of the . . . court's sentencing discretion"). *Cf. also* United States v. Sanclemente-Bejarano, 861 F.2d 206, 208–09 (9th Cir. 1988) (holding that under Fed. Rule Crim. Proc. 11 court advice about eligibility for parole is not required before

minimum sentence date carries a *de jure* effect and Constitutionally-protected interest. *Cf. Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (plea entered on advice of counsel was not invalidated where petitioner *failed to show prejudice* by counsel's misinformation as to parole ineligibility).[13] The Supreme Court's analysis of petitioner's evidence concerning reliance in *Hill* would be immaterial if the petitioner did not have a cognizable liberty interest in the terms of his eligibility for parole.

Third, this Circuit has recognized that the Board's broad discretion notwithstanding, an inmate holds a protected interest in receiving a parole decision free from constitutional error. *Burkett v. Love,* 89 F.3d 135, 139 (3d Cir. 1996) (concluding that a parole denial can give rise to a due process deprivation if it is based on constitutionally impermissible reasons); *id.* at 139-40 (finding that an "agency violates substantive due process in grounding its action on "constitutionally impermissible reasons") (citing *Block v. Potter,* 631 F.2d 233, 236 (3d Cir.1980)). Plaintiff had a right – as noted by the Commonwealth Court – to due process as to any alteration of his original sentence. It cannot be denied that extending the maximum term of a sentence of incarceration affects a core liberty interest. Plaintiff has sufficiently alleged that he has suffered a detriment in that the Defendants' reassignment of credit for time served formed the sole basis for the Parole Board's rescission of Plaintiff's opportunity for parole. That is, Plaintiff has sufficiently alleged that the Board implemented the unauthorized alteration of

accepting guilty plea) (citing *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). *But cf. infra* (discussing *Hill*).

[13] *Cf. also id*. at 62-63 (White, J. (concurring) (had petitioner pled that his counsel knew of his ineligibility, he would have been entitled to a hearing, as failure to inform client of relevant law satisfies first prong of *Strickland* and petitioner "clearly alleged more than sufficient facts" to show prejudice)).

Plaintiff's sentence dates as an absolute bar to his consideration for parole, effectively denying it for an impermissible reason.[14]

In sum, the Third Circuit has recognized a protected liberty interest in *eligibility* for – as distinct from receipt of – parole. And although Defendants correctly assert that Plaintiff does not have a 14th Amendment right to a particular parole determination, they err in asserting that he has no 14th Amendment right to be considered for release in accordance with sentencing by the Court, rather than barred by an impermissible alteration of that sentence.

(4) "The minimum sentence is merely a calculation of the earliest time when the inmate can become eligible for parole consideration." – ECF No. 34 at 7 (citing *Folk v. Atty. Gen. of Commonwealth of Pa.*, 425 F.Supp.2d 663, 676 (W.D. Pa. 2006). Indeed, his/her minimum sentence *is* the time when an inmate becomes eligible for parole - and this forms the basis of Plaintiff's claim. *See supra*. *See also* ECF No. 37 at 7 ("[I]t was not [within the authority of] the position of Defendant Thompson to take away [Plaintiff's] interview and his minimum release date without court ordered authorization. In fact, no one possess[es] the authority to alter an expired sentence 10 years after it was expired.").

(5) "Disco does not allege that he would have been paroled in 2016 if his minimum date would have remained, but if he did the argument should have little traction considering his sentence was recomputed and he still remains in prison." ECF No. 34 at 7. The Court notes that Defendants do not indicate if or when Plaintiff was provided a release interview subsequent to

---

[14] *See also id.* at 142 (collecting cases and recognizing "that an allegation that parole was denied in retaliation for the successful exercise of the right of access to the courts states a cognizable claim for relief"). *Cf.* Commonwealth Court Opinion at 5, n. 3 ("The timing of the DOC's review coincides with an original jurisdiction action Disco filed against DOC on September 30, 2015 . . . in which he challenged the amount of backtime . . . [as] more than his maximum sentence allowed without an order from a court or the Board. DOC filed preliminary objections, which this Court sustained [in April 2016]").

the Commonwealth Court Opinion in his favor.  If Defendants are asserting in support of their

Motion to Dismiss, either (a) that Plaintiff must establish that he was deprived of early release,

rather than opportunity/consideration for early release and/or (b) that Plaintiff's continued

incarceration establishes that he would not have been released had he been afforded the interview

scheduled, Defendants have failed to provide any support for either assertion.

### C.  Qualified Immunity

Defendants' Brief in Support asserts the additional defense of qualified immunity.  *See*

ECF No. 34 at 9-10.  The doctrine of qualified immunity protects government officials "from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

*U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)* (quoting *Harlow v. Fitzgerald*, 457 U.S.

800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  Qualified immunity operates to ensure that,

before they are subjected to suit, government officials are put on notice that their conduct is

unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

"Qualified immunity balances two important interests—the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555

*U.S. at 231, 129 S.Ct. 808*. "If the law was clearly established, the immunity defense ordinarily

should fail, since a reasonably competent public official should know the law governing his

conduct." *Harlow, 457 U.S. at 818–19, 102 S.Ct. 2727*.  In determining whether qualified

immunity applies, the courts conduct a two-pronged inquiry. *Pearson, 555 U.S. at 232, 129 S.Ct.

808*; *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, the court must

determine "whether the facts that the plaintiff has alleged … or shown … make out a violation of

a constitutional right." *Pearson,* 555 U.S. at 232, 129 S.Ct. 808 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); *Spady,* 800 F.3d at 637 (quoting *Pearson,* 555 U.S. at 232, 129 S.Ct. 808). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy,* 274 F.3d 133, 136 (3d Cir. 2002).

The crux of the "clearly established" analysis "is whether officers have 'fair notice' that they are acting unconstitutionally." *Mullenix,* 136 S.Ct. at 314. In other words, an officer is not entitled to qualified immunity if "at the time of the challenged conduct, the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (alteration and internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix,* 136 S.Ct. at 308 (citation and internal quotation marks omitted). The Constitutional principle that an order of the Court is to be implemented rather than altered is clearly established. The specific question underlying this case is whether an official charged with implementing a Court's judgment of sentence has fair notice that s/he may not recalculate or extend the prisoner's sentence without further Court Order or other authority.

Given the related law identified in this Court's initial inquiry, *supra,* and the undeveloped record, the Court finds Defendants' request for a determination of their entitlement to qualified immunity at best premature.[15]  *Compare* ECF No. 34 at 10 (asserting Defendants' entitlement to qualified immunity because defense counsel "is unaware of a precedent that holds it is unconstitutional to incorrectly calculate a sentence that does not render an injury to the Plaintiff because it did not result in an inmate remaining incarcerated past his maximum sentence.").

### D.  <u>Defendants' Other Grounds for Dismissal</u>

First, Defendants correctly assert that Section 1983 claims against the individual Defendants acting in their official, rather than individual, capacities must be dismissed.  *See* ECF No. 34 at 4 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Their Brief in Support also correctly asserts that the Parole Board, as an administrative agency of the Commonwealth of Pennsylvania, is immune from suit pursuant to the Eleventh Amendment.  *Id.* (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014) ("[S]tate agencies and their officials acting in their official capacity are not" persons for purposes of § 1983.)  Although Plaintiff's Response appears to clearly indicate his intention to bring only a permissible claim against the individual Board employee who implemented his sentence modification (*see* ECF No. 37 at 5), his Amended Complaint "move[d] to . . . includ[e] the

---

[15] The Court also notes that its initial inquiry discovered no Section 1983 case relating a factual background in which a prisoner's sentence served was altered and extended without authority. In assessing qualified immunity the Court must consider the "uniqueness" of Plaintiff's case; *i.e.*, an absence of evidence that other Departments of Correction and/or Parole Boards believe the law entitles them to take the actions complained of *sub judice* without Court Order.  *See infra*, Section III(C); *see also* Commonwealth Court Opinion at 1 (noting "the unique circumstances" of the "factually intricate appeal").

unidentified party from the [Parole Board] as Jane or John Doe, . . . in his or her individual or official capacity . . . [w]ho acted under the color of law when he or she changed a maximum expiration date on a sentence that was expired . . . ." ECF No. 32 at 2. The Parole Board thus remained as a named Defendant and formal dismissal of it as a Defendant is also appropriate.[16]

Second, Defendants make a little more than blanket assertion of entitlement to dismissal of this entire action on statute of limitations grounds. More specifically, Defendants provide a spare assertion that Plaintiff's claim is barred by Pennsylvania's two-year statute of limitations because "his cause of action against the Board occurred on December 8, 2015 and against Thompson on February 22, 2016." ECF No. 34 at 5. The Court notes Plaintiff's explication of his timely pursuit and exhaustion of administrative remedies, the documents of record provided in support, and the date of the Commonwealth Court's Opinion reversing the Parole Board's action and indicating that the unique circumstances of Plaintiff's claim raised due process considerations. Defendants provide no factual explanation or legal argument in support of their assertion of a time bar. To the contrary, their sole citation is to the unrelated case of *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (finding psychological problems of plaintiff allegedly violated by her middle school security guard insufficiently incapacitating to toll statute of limitations). The Court observes that a Pennsylvania §1983 plaintiff's claim is subject to the

---

[16] To the extent Defendants intend to raise - on the basis of the service requirements of Fed. R. Civ. P. 4(m) - a dismissal or other challenge to Plaintiff's claim against the John/Jane Doe in Doe's individual capacity, such a challenge is unsupported in Defendants' Brief and appears without merit. ECF No. 34 at 2, n. 1. When a plaintiff lists a defendant's identity as Doe because his/her name is not known, the plaintiff should be afforded the opportunity to identify said defendant through discovery; only when upon completion of discovery the Doe remains unascertained should that unnamed party be dismissed. *See, e.g.*, *Alston v. Parker*, 363 F.3d 229, 233 n. 6 (3d Cir. 2004); *Johnson v. City of Erie, Pa.*, 834 F.Supp. 873, 878 (W.D. Pa. 1993); *Sheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990). *Cf.* ECF No. 37 at 5 ("Plaintiff is unable to identify the actual person that Defendant Thomson contacted from the Board when she modified the expired sentence.").

Commonwealth's personal injury statute of limitations which requires that an action be brought within two years of accrual of the claim (*e.g.*, of a plaintiff's becoming aware of the allegedly unconstitutional acts). 42 Pa. Cons.Stat. § 5524(7). However, this Circuit has expressly held that the Prison Litigation Reform Act of 1995 (the "PLRA"), which requires that a prisoner exhaust administrative remedies prior to filing a §1983 claim, creates "a statutory prohibition that tolls Pennsylvania's statute of limitations". Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 603 (3d Cir. 2015). Defendants' unsupported assertion of grounds for dismissal is therefore without merit.

Third, Defendants also assert entitlement to a Rule 12(b)(6) dismissal of Plaintiff's claim of mental or emotional injury on grounds that Defendant has not suffered an "actual" physical injury: "Disco may not recover damages for a mental or emotional injury without a prior showing of physical injury." ECF No. 34 at 5-6 (citing 42 U.S.C. Sect. 1997e(e)). As the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, bars a prisoner from bringing a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury," any such claim will be dismissed. *See* Amended Complaint, ECF No. 32, at 2 (asserting violation of right to due process and infliction of "emotional distress and mental anguish").

Fourth, Defendants assert that Plaintiff cannot establish a substantive due process violation because he could not evidence "behavior [that] is so egregious and so outrageous that it may be said to shock the conscience." ECF No. 34 at 6. The undeveloped record does not preclude a set of facts by which Plaintiff might state a substantive due process claim, and Defendants' request for dismissal on this ground is therefore premature.

Fifth and finally, Defendants seek dismissal on grounds that Plaintiff cannot meet the "evil motive or intent" or "reckless or callous indifference" standard to show entitlement to punitive damages, the only damages named in the *pro se* Complaint. *Id.* at 8 (citing *Smith v. Wade*, 461 U.S. 30 (1981)). As noted *supra*, a *pro se* Complaint in entitled to liberal and fair-inference-based reading, and *sua sponte* leave to amended where appropriate. Moreover, it is not yet clear at this juncture that Plaintiff would be unentitled to punitive damages under any possible factual development of his claim. Plaintiff is therefore not yet precluded from discovering evidence that Defendants' behavior meets the standard required for punitive damages.

## V.    CONCLUSION

As more specifically set forth above, the Court concludes that Plaintiff's Fourteenth Amendment due process claim under §1983 is not precluded as a matter of law and that Plaintiff has identified facts that suggest a plausible violation of those rights. Consequently, Defendants' Motion to Dismiss, ECF No. 33, will be granted as to (1) claims against the individual Defendants in their official capacities or against the Defendant Parole Board, and (2) any claims for damages for mental or emotional injury. Defendants' Motion will otherwise be denied by separate Order.

Dated: April 7, 2020                                              BY THE COURT:

                                                                 LISA PUPO LENIHAN
                                                                 United States Magistrate Judge

cc:     Richard Anthony Disco
        JH-1908
        SCI Fayette
        48 Overlook Dr.
        LaBelle, PA 15450


        *Via First Class U.S. Mail*

        All Counsel of Record
        *Via Electronic Mail*